John C. Hueston, State Bar No. 164921
*jhueston@hueston.com*
Alison Plessman, State Bar No. 250631
*aplessman@hueston.com*
Adam Olin, State Bar No. 298380
*aolin@hueston.com*
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

Attorneys for Defendant
DONG YIN DEVELOPMENT (HOLDINGS) LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL YOUSSEFZADEH, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GLOBAL-IP CAYMAN, et al., <br><br> Defendants. | Case No. 2:18-cv-2522-JLS (JCGx) <br> Assigned to the Hon. Josephine L. Staton <br><br> **SPECIALLY APPEARING DEFENDANT DONG YIN DEVELOPMENT (HOLDINGS) LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AND LIFT STAY** <br><br> Date: October 19, 2018 <br> Time: 2:30 p.m. <br> Courtroom: 10A <br><br> Complaint Filed: February 23, 2018 <br> Trial Date: Not Set |

## I. INTRODUCTION

Facing this Court's Order compelling Plaintiffs to arbitrate their claims against Defendant Global-IP Cayman ("GIP-Cayman") and staying the remaining claims against Defendants Dong Yin Development (Holdings) Limited ("Dong Yin") and Global-IP USA, Inc. ("GIP USA") pending that arbitration, Plaintiffs now seek to outmaneuver the Court's Order and their obligation to arbitrate the issues at the heart of this case by seeking to dismiss GIP-Cayman from this action. But even if the Court were to dismiss GIP-Cayman from this case, the stay should remain intact. The issues presented in this case are referable to arbitration regardless of whether Plaintiffs elect to arbitrate them or not, and regardless of whether GIP-Cayman is a party to this action. Not only does GIP-Cayman continue to have protectable arbitral rights, but also non-party Bronzelink (GIP-Cayman's controlling shareholder and signatory to the same arbitration agreement) has begun to initiate arbitration proceedings against Plaintiffs on the very same issues presented in Plaintiffs' complaint. Because Dong's Yin's liability is inextricably intertwined with the conduct that is the subject of these arbitrable claims, a stay of this action is required under 9 U.S.C. § 3. Alternatively, this Court should exercise its inherent discretion to continue to stay this action pending Plaintiffs' arbitrations with GIP-Cayman and Bronzelink. Moreover, should the Court elect to dismiss GIP-Cayman from this action, it should similarly dismiss all claims against Dong Yin and GIP USA because GIP-Cayman is an indispensable party.[1]

---

[1] Dong Yin intends to file a motion to dismiss affirmatively seeking this relief should the Court dismiss-GIP Cayman and lift the stay of Plaintiffs' claims against Dong Yin and does not affirmatively seek it, or any other relief pursuant to Rule 12(b), here. As will be more fully explained in any forthcoming motion to dismiss filed by Dong Yin, Dong Yin maintains that this Court does not have personal jurisdiction over Dong Yin for the reasons set forth in Dong Yin's Motion to Dismiss filed in another action brought by Plaintiffs related to the same issues. *See STM Atlantic, N.V. v. Dong Yin Development (Holdings) Limited*, 2:18-cv-01269-JLS-JCG, Dkt. 95 (the "Related Case").

## II. ARGUMENT

### A. Regardless of Whether GIP-Cayman is Dismissed From This Action, the Stay Should Remain in Place.

For the reasons set forth in Defendants GIP-Cayman and GIP USA's Opposition to Plaintiffs' Motion to Dismiss and Lift Stay, Dkt. 32, which Dong Yin joins, and in Dong Yin's Motion to Stay filed in the Related Case, Dkt. 96, the Court should not lift the stay as to the claims against Dong Yin or GIP USA even if the Court grants Plaintiffs' motion to voluntarily dismiss GIP-Cayman from this action.

#### 1. *Plaintiffs' Suit Centers on Issues Referable to Arbitration*

Section 3 of Chapter 1 of the Federal Arbitration Act entitles litigants in federal court to a stay of any action that involves "any issue referable to arbitration under an agreement in writing for such arbitration" until "such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because there is no conflicting provision in Chapter 2 (the Convention), this stay provision applies to proceedings involving agreements subject to the Convention. *See* 9 U.S.C. § 208 ("Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not in conflict…"); *China Nat'l Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1179–80 (C.D. Cal. 2001) (stay provision of § 3 does not conflict with the Convention). Moreover, a non-signatory litigant may invoke a stay under § 3 where traditional state contract principles (including equitable estoppel) would permit the non-signatory to enforce the agreement. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629-31 (2009).

A stay is therefore "required" if the *issues* in the litigation are "referable to arbitration under an agreement in writing." *Id*. at 631 (quoting 9 U.S.C. § 3). And, "[i]f a written arbitration provision is made enforceable against (or for the benefit of) of a third party under state contract law, [§ 3's] terms are fulfilled." *Id*. Thus, if traditional principles of state law would permit a non-signatory to enforce an arbitration provision, then, under *Carlisle*, the court must *stay* litigation of arbitrable

issues pending and subject to arbitration of those issues between signatories. This is so even where a court cannot *compel* arbitration with non-signatories. *See, e.g.*, *Waste Mgmt., Inc. v. Residuous Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 340, 342 (5th Cir. 2004) (concluding that § 3 permits a non-signatory to "request[] a stay of litigation on an issue covered by an arbitration agreement" where claims are "based on the same operative facts, are inherently inseparable from those against [arbitrating party], and the present suit could have a critical impact on the pending arbitration").

The doctrine of equitable estoppel permits a non-signatory to invoke an arbitration agreement when either: (1) a signatory's claims against the non-signatory rely on, or are founded in and inextricably intertwined with, the terms or obligations of the agreement providing for arbitration; or (2) a signatory alleges "substantially interdependent and concerted misconduct" by the non-signatory and another signatory. *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 216-217 (2009) (cited by *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229-32 (9th Cir. 2013)).

Here, the Court has already held that the Shareholder Agreement ("SHA")—the contract at "the very core of this dispute"—contains an enforceable and "strikingly broad" arbitration provision. *See* Dkt. 30 at 10, 11. Plaintiffs' Complaint amounts to an assertion that they were fraudulently induced to enter the transaction with Bronzelink, and that in any event, the Bronzelink-appointed board directors of GIP-Cayman (allegedly controlled by Dong Yin) violated the duties and obligations in the SHA. *See* Dkt. 30 at 11 (recognizing that the "SHA creates and defines the legal relationship between Bronzelink, the [Bronzelink-appointed] Directors, and GIP-Cayman"); *see also* Dkt. 1 (Complt. ¶¶ 3, 61-63, 67-82, 238-245). Plainly, Plaintiffs allege "interdependent" misconduct by non-signatory Dong Yin and signatories Bronzelink and GIP-Cayman. Dkt. 30 at 14 (recognizing Dong's Yin's liability is "tied directly" to the arbitrable claims against GIP Cayman). For example, in the sole claim that Plaintiffs assert against Dong Yin, they incorporate all other allegations in the Complaint and allege that Dong Yin caused the Bronzelink-appointed board directors

of GIP-Cayman to engage in wrongful conduct (contrary to terms and duties imposed by the SHA), including but not limited to taking control of the GIP-Cayman board, refusing to participate in noticed board meetings, refusing to consider export control compliance issues, and refusing to consider or approve certain debt financing proposals presented to the board. (*See, e.g.*, Complt. ¶¶ 3, 61-63, 67-82, 238-245.)

Because the SHA is at the "very core of this dispute," either of the *Goldman* circumstances would estop Plaintiffs from avoiding a stay under relevant state law. *See* Dkt. 30 at 11. Accordingly, this Court must stay this litigation pending arbitration between Plaintiffs, Bronzelink, and GIP-Cayman, regardless of whether GIP-Cayman is a party to this action.

### 2. *The Court Should Alternatively Exercise Its Discretion to Stay*

If this Court determines that a stay is not mandatory under 9 U.S.C. § 3, the Court should maintain the discretionary stay already in place under its inherent authority to control its docket. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 & n.23 (1983); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In determining whether a stay is warranted, courts look to whether arbitrable claims (here, those between Plaintiffs and signatories GIP-Cayman (which this Court compelled to arbitration) and Bronzelink (which is instituting arbitration) are interconnected with non-arbitrable claims (here, those between Plaintiffs and non-signatory Defendants Dong Yin and GIP USA). *See, e.g., Ballard v. Corinthian Colls., Inc.*, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006).

As this Court has already held, a stay is justified where the arbitrable claims depend upon the same facts and are inherently inseparable from the non-arbitrable claims. Dkt. 30 at 13 (citing cases in support). Moreover, whether the parties to the arbitrable claims are the same parties to the proceeding sought to be stayed does not change the analysis. *See Landis*, 299 U.S. at 254–55 (there is no requirement that "the parties to the two causes [] be shown to be the same" before a court exercises its inherent authority to stay one proceeding in light of another); *Ballard*, 2006 WL

2380668, at *2 (staying case pending arbitration even though all plaintiffs with arbitrable claims had had their claims dismissed); *T-Mobile USA, Inc. v. Montijo*, 2012 WL 6194204, at *6 (W.D. Wash. Dec. 11, 2012) (staying case pending arbitration between plaintiff and nonparties to the litigation).

Plaintiffs' allegations of misconduct are the subject of the claims this Court compelled to arbitration between Plaintiffs and GIP-Cayman and the arbitration Bronzelink has commenced against Plaintiffs via service of its Notice of Default. Should this litigation proceed, findings by this Court could therefore have a "critical impact" on the rights of Bronzelink and GIP-Cayman to arbitrate. *Powell v. Gulf States, Inc.*, 2005 WL 757509, at *4 (N.D. Cal. Apr. 4, 2005). "[G]iven the interdependence of the claims, simultaneous litigation of such claims in separate forums would likely lead to a duplication of effort, as well as the risk of inconsistent decisions and inefficiencies.'" Related Case, Dkt. 30, at 14 (quoting *Ballard*, 2006 WL 2380668, at *2). This Court should continue stay these proceedings pending the resolution of the arbitrations.

### B. Should the Court Dismiss GIP-Cayman, It Should Dismiss All Parties Because GIP-Cayman Is Indispensable.

For the reasons set forth in the Motion to Dismiss filed in the Related Case by Specially Appearing Defendant China Orient Asset Management (International) Holding Limited, Related Case, Dkt. 93, GIP-Cayman is an indispensable party to this case. This lawsuit, and the sole claim against Dong Yin, are founded on two contracts to which GIP-Cayman is a party – the SHA and Share Purchase Agreement ("SPA"). As discussed above, the Court has already determined that these contracts are "at the very core of this dispute." Dkt. # 30 at 11 (quoting *Ever-Gotesco Res. & Holdings, Inc. v. PriceSmart, Inc.*, 192 F. Supp. 2d 1040, 1043 (S.D. Cal. 2002). GIP-Cayman is therefore indispensable, rendering any lawsuit in its absence untenable. And to the extent the Court dismisses GIP-Cayman, it should also dismiss all other parties for a lack of an indispensable one. *See Rheodyne, Inc. v. Ramin'*, 1978 WL 21392, at *5

(N.D. Cal. Dec. 21, 1978) ("It follows from the preceding ruling dismissing the [indispensable parties], that this entire action must be dismissed for failure to join [them]."); *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (dismissing entire action after dismissing indispensable party from the suit).

The Court must dismiss an action if it lacks a party who: (i) is necessary (*i.e.*, required to be joined if feasible); (ii) cannot feasibly be joined; and (iii) is indispensable such that "in equity and good conscience" the action cannot proceed among the existing parties. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). GIP-Cayman satisfies each element of this test.

### 1. *GIP-Cayman Is A Necessary Party*

"It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." *Ryan v. Volpone Stamp Co., Inc.,* 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) (collecting cases). GIP-Cayman is a party to both the SPA and SHA. Dkt. 30 at 2. It was through these agreements that Plaintiffs allege Bronzelink gained ownership and ultimately control of GIP-Cayman—actions that form the bases of Plaintiffs' claims. (Compl. ¶¶ 59-88.) This point is not reasonably in dispute. Again, the Court has already recognized that these agreements are at "the very core of this dispute." Dkt. 30 at 11 (recognizing that the SHA is "at the very core of the dispute"). Thus, as a signatory, GIP-Cayman has a protectable interest in this action. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (explaining that a party is "necessary" to a litigation "that threatens to impair [that party's] contractual interests").

### 2. *GIP-Cayman's Right To Arbitrate Precludes Its Participation In This Case*

The Court has already determined that GIP-Cayman is entitled to arbitrate disputes related to the Satellite Project in Hong Kong. Dkt. 30 at 10-12. Plaintiffs' Motion implicitly recognizes that they cannot maintain *any* action against GIP-Cayman but the arbitration proceeding to which it agreed. *See* Mot. at 3 ("Plaintiffs

do not intend to pursue arbitration of their claims in this action against GIP-Cayman…").

It is moreover infeasible to join a party who has an enforceable arbitration clause. *See, e.g.*, *Corsi v. Eagle Publ'g, Inc.*, 2008 WL 239581, at *5 (D.D.C. Jan. 20, 2008) (dismissing case where defendant "is necessary under Rule 19(a) but cannot be joined because of the arbitration clause in the contracts"); *LST Fin., Inc. v. Four Oaks Fincorp, Inc.*, 2014 WL 3672982, at *4 (W.D. Tex. July 24, 2014) (dismissing case where the "mandatory arbitration provisions" made joinder of necessary parties "unfeasible"); *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, No. 08-cv-4871 (N.D. Cal. June 1, 2009) (concluding that a party who cannot be joined due to a binding arbitration clause was "an indispensable party pursuant to" Rule 19), *aff'd on other grounds*, 414 F. App'x 61 (9th Cir. 2011). Thus, regardless of whether the Court dismisses GIP-Cayman, it will not participate in this suit.

### 3. *GIP-Cayman Is An Indispensable Party*

As an initial matter, GIP-Cayman is an indispensable party because its contractual rights are at stake. *See Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); *Dawavendewa*, 276 F.3d 1150, 1157 (9th Cir. 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-24 (9th Cir. 2002) (explaining that absent parties are indispensable if the lawsuit affects their "substantial" rights "aris[ing] from terms in bargained contracts").

GIP-Cayman is moreover indispensable under the relevant four-factor test which considers: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the other parties; (2) the extent to which any prejudice could be lessened or avoided by shaping the judgment or the relief; (3) whether a

judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed. *Peabody W. Coal Co.*, 610 F.3d at 1083; Fed. R. Civ. P. 19(b)(1)-(4).

These factors favor dismissal. As set forth in GIP-Cayman's Opposition, litigating this case in its absence is not only likely—but practically presumed—given the contractual interests and arbitral rights at stake. *See United States, ex rel. Hill v. Coulter*, 1998 WL 460239, at *2 (N.D.N.Y. July 31, 1998) ("[P]rejudice is almost presumed given that a contracting party is often the prime example of illustrating a prejudiced party."). Moreover, a finding by the Court that GIP-Cayman is not an independent entity, but operating at the direction of an instrumentality of the People's Republic of China, could have serious real-world impact on its ability to successfully manage a company subject to export control laws. *See Meyer v. Kalanick*, 2016 WL 3509496, at *3 (S.D.N.Y. June 20, 2016) ("As Rule 19 recognizes, it is the practical effects of non-joinder on which the Court must focus, and [absent party] faces real-world impediments to its interests that justify the application of mandatory joinder."). Dong Yin and GIP USA could potentially also be faced with inconsistent judgments and piecemeal litigation. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1292 (10th Cir. 2003) (explaining that defendant "might well be prejudiced by multiple litigation or even inconsistent judgments").

Moreover, Plaintiffs clearly have an adequate remedy available despite the dismissal of this action: to first arbitrate their disputes with Bronzelink and GIP-Cayman in Hong Kong, as they agreed to do. *See Corsi*, 2008 WL 239581, at *5 ("Obviously, plaintiffs have a remedy. They may pursue arbitration…. [T]here is no legal or equitable reason for the Court to exercise its discretion under Rule 19(b) to permit the plaintiffs to evade their contractual obligations by instituting suit against a non-party to the contract.").

Thus, if this Court elects to dismiss GIP-Cayman from this action, it should also dismiss claims against GIP-USA and Dong Yin because GIP-Cayman is indispensable to this action and it cannot proceed in its absence.

## III. CONCLUSION

For the reasons set forth above, Dong Yin respectfully requests that the stay ordered by this Court remain in place pending arbitration between Plaintiffs, GIP-Cayman, and Bronzelink, regardless of whether GIP-Cayman is dismissed from this action. Moreover, should the Court dismiss GIP-Cayman, it should also dismiss GIP-USA and Dong Yin with prejudice because GIP-Cayman is an indispensable party.

Dated: September 28, 2018

HUESTON HENNIGAN LLP

By: */s/ John C. Hueston*
John C. Hueston
Attorneys for Specially Appearing Defendant DONG YIN DEVELOPMENT (HOLDINGS) LIMITED